**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| THOMAS O. EIFLER, SR. | ) | CASE NUMBER 17-31862 |
| | ) | |
| DEBTOR | ) | HON. THOMAS H. FULTON |

**CREDITOR, ARDIS E. GREENAMYER'S MOTION TO DISMISS**

*********

Pursuant to Rules 11 U.S.C. §§ 1112(b)(4) and 362(d)(1), Ardis E. Greenamyer, II, respectfully requests that this Court dismiss the current bankruptcy case for bad faith. In support, Greenamyer states as follows:

**INTRODUCTION**

Movant, Ardis E. Greenamyer, II, holds a five-million-dollar judgment against the Debtor, Thomas O. Eifler, Sr. In the state trial court, Eifler Sr. unsuccessfully moved the court to reduce the bond required to forestall collection while he appealed. Shortly after his motion was denied, he filed his petition for Chapter 11 bankruptcy.  The present petition was filed as a substitute for a state court supersedes bond and not is not a good faith attempt to reorganize through the bankruptcy court.

The circuit judgment arises out of chicanery involving a highly profitable business venture started by Greenamyer and Thomas Eifler, Jr. From 2006 to 2008, Eifler Sr. colluded with his son to cheat Greenamyer out of millions of dollars. Over the last eight years, the Eiflers have used their substantial resources to impede the resolution of this dispute. Related litigation has resulted in multiple law suits in trial and appellate courts of Kentucky and Louisiana. Previously, this matter

was delayed for several years while Eifler Jr. sought unsuccessfully to discharge his obligations to Greenamyer through bankruptcy.[1]

Greenamyer finally received his day in Court in June of 2016. The jury found the Eiflers conspired to defraud Greenamyer. Greenamyer obtained judgments against Eifler Sr. for aiding and abetting fraud, tortious interference with contract, tortious interference with prospective contractual rights, and civil conspiracy. For his role in the fraud, the jury assessed $5,038,000.00 in damages against Eifler Sr., including $2,750,000 in punitive damages.[2]

Eifler Sr. submitted a notice of appeal on January 10, 2017. Eifler Sr. sought to further delay collection of the judgment by also submitting a motion to reduce bond. The bond motion resulted in two hearings and a delay in collection before the Court ruled. The Court denied bond relief.[3]

Earlier this year, Greenamyer began efforts to collect the jury award against Eifler Sr. Eifler Sr. then filed his Chapter 11 petition, triggering the Bankruptcy Code's automatic stay provisions. Chapter 11 automatic stay protections are not to be used as a vehicle to skirt state court bonding requirements.[4]

The present petition was filed for just such a purpose. This is a classic "bad faith" petition.[5]

---

[1] Eifler Jr.'s Bankruptcy, Case No. 11-36154, Jr.'s debt to Greenamyer was not discharged.
[2] Exhibit 1 - Jury Verdict; Exhibit 2 - December 14, 2016, Order Granting in Part and Denying in Part Motion for JNOV.
[3] *See* Order Re Supersedeas Bond, May 15, 2017, p. 4, attached hereto as Exhibit 3
[4] Now that Greenamyer has finally received his judgment, Eifler Sr. now seeks to hire a bevy of lawyers to foster further delay.
[5] *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 128 (3d Cir. 2004) ("if there is a 'classic' bad faith petition, it may be one in which the petitioner's only goal is to use the automatic stay provision to avoid posting an appeal bond in another court").

## ARGUMENT

Eifler Sr. filed a Chapter 11 bankruptcy petition in bad faith. A Chapter 11 bankruptcy petition may be dismissed for cause if the petition is filed in bad faith under 11 U.S.C. § 1112(b)(1). *In re Johnson*, 546 B.R. 83, 156 (Bankr. S.D. Ohio 2016); *In re Mense*, 509 B.R. 269, 276 (Bankr. C.D. Cal. 2014) (applying standard to judgment debtors attempt to use bankruptcy as a substitute for an appellate bond). Once the moving party establishes a *prima facie* case of bad faith, the debtor has the burden to prove that it filed its Chapter 11 petition in good faith. *Id.* (internal citations omitted).

When determining whether a debtor filed a bankruptcy petition in good faith, the Court looks at multiple factors relating to the debtor's financial condition, motives, and the local financial realities, including a failure to attempt to repay creditors. *In re Johnson*, 546 B.R. at 158; *In re Mense*, 509 B.R. at 277 (applying standard to judgment debtors attempt to use bankruptcy as a substitute for an appellate bond). Here, it is clear that Eifler Sr.'s only motive in filing Chapter 11 bankruptcy was to game the system by avoiding the payment of appellant bond and delaying the collection of the judgment entered against him. Under 11 U.S.C. §§ 1112(b)(4) and 362(d)(1), Eifler Sr.'s Chapter 11 bankruptcy petition should be dismissed, and the automatic stay that went into place when he filed his petition should be lifted.

### I. CHAPTER 11 BANKRUPTCY MAY NOT BE UTILIZED TO AVOID BOND.

While Chapter 11 bankruptcy creates a tempting pathway for judgment debtors to avoid collection efforts without posting a supersedeas bond, it is an inappropriate use of the bankruptcy court. There is evidence of bad-faith sufficient to dismiss Eifler Sr.'s Chapter 11 petition under factors set out in 11 U.S.C. § 1112(b)(4).

> **A. The Western District of Kentucky Bankruptcy Court Has Not Allowed Debtors To Use the Bankruptcy As A Substitute for Kentucky's Appellate Bonding Requirements.**

This Court has had occasion to strongly condemn attempts by debtors to utilize the bankruptcy courts to circumvent Kentucky procedural rules regarding appeal bonds. Like Eifler Sr., the *In re Smith* debtor filed a bankruptcy petition on the heels of an adverse judgment shortly after collection efforts began against him. 58 B.R. 448, 449 (Bankr. W.D. Ky. 1986). Judge Deitz's opinion contains a thorough discussion of the purpose of appellate bonds, the principles of federalism, and its application to petitions filed in bad faith. In rejecting Smith's attempts to use the bankruptcy court to delay collection of the state court judgment, the Court concluded:

> State law requirements of supersedeas bonds are not to be lightly ignored. The right to appeal is not an absolute one, having neither common law nor federal constitutional basis, but is a creation of statute, and its exercise should be strictly in accordance with the controlling state law. Due regard for principles of federalism requires no less than our unrelenting respect for the controlling state law on supersedeas bonds as expressed in Kentucky Rule of Civil Procedure 73.04.

*Id.* at 451. As a result of the Court's rationale, Smith's petition was dismissed. Eifler Sr. is perfectly entitled to appeal, as he has. However, having failed to avail himself of CR 73 collection stay provision, Chapter 11 does not provide him an avenue to skirt Kentucky's state court rules.

In fact, Eifler Sr.'s state court counsel made it obvious that the purpose of the then-impending bankruptcy was mere delay tactic that would be utilized if the state court did not grant relief from the statutory supersedeas bond requirement.[6] Counsel for the Debtor repeatedly threatened in his motion that if his supersedeas bond relief was not granted, he would resort to the bankruptcy court for that same purpose. *Id.*

---

[6] Exhibit 4 – Defendant Thomas O. Eifler, Sr.'s Supplemental Brief In Support of Motion to Reduce or Eliminate Supersedeas Bond Requirement.

### B. The Western District's Rejection of Eifler Sr.'s Tactics is Consistent with Other Courts' Interpretation of Similar Scenarios.

Bankruptcy courts have consistently dismissed petitions filed to delay collection from a single judgment creditor. In doing so, a number of factors are analyzed in deciding whether a bankruptcy petition has been filed in bad faith. On balance, the following factors all warrant dismissal of Eifler, Sr.'s bankruptcy petition as it was filed in bad faith as an improper substitute for state court appellate bond made in an effort to avoid paying a single creditor, Ardis E. Greenamyer.

1. <u>Ability to Post A Bond and/or Pay the Judgment Without Going Out of Business</u>.

The small number of cases that have allowed a Chapter 11 filing to substitute a supersedeas bond have all involved cases where, in the absence of the Chapter 11 filing, a profitable ongoing concern would be put out of business. This takes two forms "1) where there is a multinational company faced with mass tort litigation; or 2) where a large debt would force the debtor to close its business and liquidate." *In re Boynton*, 184 B.R. 580, 583 (Bankr. S.D. Cal. 1995) citing, *Mueller v. Sparklet Devices (In re Sparklet),* 154 B.R. 544, 548 (Bankr.E.D.Mo.1993). Conversely, when Chapter 11 filings are unnecessary to prevent liquidation of profitable businesses, courts have dismissed the filings on bad faith grounds. See, e.g., *In re Smith*, 58 B.R. 448 (Bankr.W.D.Ky. 1986); *In re Davis*, 93 B.R.501 (Bankr.S.D.Tex. 1987); *In re Boynton*, 184 B.R.580 (Bankr.S.D.Cal. 1995); *In re Fox*, 232 B.R. 229 (Bankr.D.Kan. 1999); *In re Marsch*, 26 F.3d 26 F.3d 825 (9th Cir. 1994)(Upholding $27,452 sanction award against debtor filing a bad faith Chapter 11 petition).

In this case, no ongoing venture is in jeopardy. The judgment in this case is not against a business but an individual. Moreover, even looking broadly at the businesses Eifler owns, they are not placed in jeopardy by the judgment. A single member investment business is not the type of

5

business which a Chapter 11 reorganization would benefit, like a construction company or medical facility with significant equipment assets. As an investment advisor, Eifler Sr.'s business runs on his experience in the industry and connections with clients rather than any significant catalogue of equipment. Therefore, it is unlikely that having to pay his judgment or post a sufficient bond would stop Eifler Sr.'s ability to continue his business or jeopardize the value of his estate to his creditors.

    2.   <u>Action to Transfer Assets or Place Them Beyond the Reach of Creditors</u>.

*In re Edwards*, 140 B.R. 515, 520 (W.D. Mo. 1992), and *In re Primary Health Services, Inc.*, 227 B.R. 479, 485-486 (Bankr.N.D. Ohio 1998), both conclude that one of the core reasons to dismiss a bankruptcy petition for bad faith exists when a debtor attempts to transfer assets to avoid collection by its creditors.

In the short months before Eifler Sr.'s bankruptcy filing, Greenamyer was able to discover a limited amount of information about Eifler Sr.'s assets. This limited amount of information has already revealed that:

- Eifler Sr. made a conspicuous transfer of $100,000 to a "Legacy Bank" in Texas, a state infamous for its favorable debt protection safe harbors.[7]

- Eifler Sr. has paid $35,000 to Burke Neal, PLLC, apparently to fund his son's appeal of the judgment Greenamyer was awarded against Eifler Jr.[8]

- Since June, 2016, the month of the Jury Verdict, Eifler's own Statement of Financial Affairs reveals that he has made gifts of over $150,000 to his wife and grandchildren in prepayment of rent, private school tuition payments, contributions to 529 education plans, and personal checks with no explanation for the gift dispersal.[9]

It appears that Eifler Sr. has been spending and moving assets in anticipation of Greenamyer's collection efforts against a non-dischargeable debt.

---

[7] Exhibit 5 - Commonwealth Bank Statement Selected Pages.
[8] Exhibit 6 - Commonwealth Bank Statement Selected Pages.
[9] D.N. 8 – Statement of Financial Affairs at pp. 12-13.

3. <u>Whether the case is a Two-Party Dispute Between the Debtor and the Judgment Creditor.</u>

In those cases where a Debtor has been permitted to use a Chapter 11 filing as a functional equivalent of a supersedeas bond, the crucial element to the finding of good faith has been the fact that the Debtor was an on-going concern with employees and the means to reorganize. *In re Sparklet Devices, Inc.*, 154 B.R. 544, 548-49 (Bankr.E.D.Mo. 1993). In the *Sparklett* case, the court dismissed the petition, finding that the filing was merely to delay the "legitimate efforts" of the estate's largest creditor. *Id.*

In this respect, it is obvious that Eifler Sr.'s Chapter 11 filing is merely a delay tactic to the legitimate collection efforts of Eifler Sr.'s single sizable creditor, Ardis Greenamyer. None of the other debts listed by Eifler Sr. appear to be in arrears or beyond Eifler Sr.'s ability to easily pay. When legitimate collection efforts began in earnest regarding the state court judgment, Eifler Sr. rushed to this Court in an effort to delay collection. If Eifler Sr. is unsuccessful on his appeal of the judgment against him, the judgment debt will remain as non-dischargeable as it is today, and in the unlikely event he is successful, the bankruptcy would be unnecessary.

4. <u>Expenses of the Appeal</u>.

In the case *In re Boynton*, 184 B.R., at 584, the Court recognized the principal of inequity of diminishing the assets of an estate to prosecute a bankruptcy which involves primarily a single large creditor:

> The facts are that the debtors have been provided with expense allowances drawn from the assets of the estate. Further, the professionals for the Chapter 11 estate are being compensated from the estate. And, the professionals handling the appeal of the Tax Court decision are being compensated from assets of the estate. Those facts, in themselves, are not dissimilar from some other Chapter 11 cases. But one central fact is different. The vast majority of the estate's assets are liquid in an investment account. Earnings are passive income not dependent upon a factory producing widgets or a company providing services to customers, thereby earning new revenues into the future.

7

>Had the debtors not filed bankruptcy, the debtors would have had to post a bond to stay assessment and collection, or the Internal Revenue Service would have done both. The Internal Revenue Service would have levied on the investment account and whatever earnings those sums generated thereafter would have inured to the benefit of the judgment creditor. Instead, the debtors posted no bond, paid a Chapter 11 filing fee, and asserted the right to utilize the assets the Service otherwise would have seized to continue to pay the debtors own living expenses and, more significantly, to pay the expenses of prosecuting the appeal. If the debtors lose the appeal in substantial measure, they are unable to pay the judgment in full from present assets. Hence, there is no down-side to their pursuit of the appeal which, in effect, is being prosecuted using the funds the Service otherwise already would have seized. In practical effect, the Service is funding the appeal against itself while it is prevented from seizing those funds and while the debtor avoids the requirement of an appeal bond. Conversely, if the debtors prevail in substantial measure on appeal, they will be able to pay any resulting judgment and dismiss the bankruptcy case, with no permissible reorganization purpose having been served.

>The Court is mindful that the debtors have proceeded with the Chapter 11 process, have obtained approval of a disclosure statement and solicited votes for their plan. Not surprisingly, the Internal Revenue Service has objected to confirmation on the same grounds raised in the instant motion. The Court is also mindful, however, that the debtors have periodically requested settlement conferences with the Internal Revenue Service, which has raised an inference that the bankruptcy process is being used to coerce a settlement of a judgment by 1) not having to post a bond on appeal, thereby delaying satisfaction of the judgment at reduced cost to the debtors; 2) holding the assets out of reach of the judgment creditor; and 3) utilizing assets which otherwise go toward satisfaction of the judgment to pay the debtors' own living expenses and the costs of prosecuting the appeal.

>Reviewing the totality of the circumstances in this case, the Court is persuaded that the debtors' Chapter 11 petition was filed in bad faith and that dismissal of the case is warranted. Accordingly, the debtors' petition shall be, and hereby is dismissed.

Similarly, Eifler Sr. has engaged a slew of attorneys to prosecute his bankruptcy, his appeal, his son's appeal, and to represent his wife and solely owned business venture in this bankruptcy case. Kaplan & Partners have received $62,110 from the estate of Eifler Sr. to represent him in this proceeding (a portion of the fee appears to be paying Kaplan and Partners to co-counsel the state court appeal with Dinsmore and Shohl). DN 13-2 p. 2. Debtor has represented that he is incurring additional expenses for professional accounting services as a result of the bankruptcy filing. DN # 36. The Debtor has hired Seiller Waterman, LLC to represent the Eifler Group, Inc.

8

and his spouse. Mr. Eifler owns 100% of Eifler Group, Inc. and diminishing the assets of the company has a correspondingly negative impact on his personal estate. DN 17 through DN 24 (entries of appearance).

Asking the estate to fund hundreds of thousands of dollars against its principal creditor is just like the *Boynton* debtor's request that the IRS fund its . Even absent this inequity, it is a waste of estate assets to pay attorneys tens, if not hundreds, of thousands of dollars to prosecute this bankruptcy not aimed at a true reorganization under Chapter 11.

    5.   Attempt to relitigate

*In re Karum Group, Inc.*, 66.B.R. 436 (Bankr.W.D.Wash. 1986) stands for the premise that where a debtor is not having financial problems but for a large state court judgment, and is being used as a substitute for a supersedeas bond, then the bankruptcy petition should be dismissed as an improper attempt to relitigate the state court decision. *Id.*, at 438. In *Grand Traverse*, "[t]he factors that tipped the balance [in the bad faith analysis] against Debtors during the course of the bankruptcy proceeding were actions of Debtors that provided additional evidence that they were using the bankruptcy proceedings as a means to delay resolution of their dispute[.]" 151 B.R. 792, 799 (W.D. Mich. 1993). In the current action, the only motivation evident for the bankruptcy is the collection efforts of the single creditor from the state court judgment. Therefore, the bankruptcy is merely an attempt to re-litigate the state court action in bankruptcy court, which the cases above specifically prohibit.

Eifler Sr. is an individual attempting to use Chapter 11 bankruptcy to avoid paying an appeal bond in violation of *Smith*, and there is cause to dismiss his Chapter 11 petition. Eifler Sr. has transferred assets to family members and other insiders in hopes that those funds will not be used to pay Greenamyer. This triggers the "for cause" bad faith dismissal factors of (4)(A), (B),

9

and (D): "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;" "gross mismanagement of the estate;" and "unauthorized use of cash collateral substantially harmful to 1 or more creditors[.]" 11 U.S.C. § 1112(b)(4)(A), (B), and (D). He is also attempting to avoid the judgment order of a court and attempting to avoid payment of the appellate bond; these acts trigger "for cause" bad faith dismissal factors (4)(E), "failure to comply with an order of the court;" and (4)(K), "failure to pay any fees or charges required under chapter 123 of title 28[,]" respectably. 11 U.S.C. § 1112(b)(4)(E) and (K). Therefore, there is overwhelming evidence that Eifler Sr. filed his Chapter 11 bankruptcy petition in bad faith, and his petition should be dismissed.

### C. Eifler Sr.'s Petition is Particularly Suspect in that the Only Substantial Debt is Presumptively Non-dischargeable.

Chapter 11 almost certainly cannot provide Eifler Sr. with any relief related to his only significant debt. The debt to Greenamyer is no mere overdue bill. The jury found that Eifler Sr. intentionally colluded with his son to defraud Greenamyer. The nature of the conduct was egregious enough to warrant punitive damages of $2,750,000. Claims such as Greenamyer's are non-dischargeable debt under § 523(a)(2)(A), (a)(4), or (a)(6). The jury's findings of intent, fraud, and malice have preclusive effect and cannot be re-litigated in bankruptcy court. *In re Kaufman*, 535 B.R. 742, 746 (Bankr. W.D. Ky. 2015).

Ultimately, Chapter 11 cannot provide any meaningful help to Eifler Sr. Eifler Sr.'s motive for filing is transparent. The only benefit Eifler Sr. will receive is use of the automatic stay provision to delay Greenamyer's collection efforts. If he wins his appeal of the state court judgment Eifler, Sr. will be solvent and have no further need of the bankruptcy court. If Eifler, Sr., losses his appeal his substantial liability to Greenamyer will be beyond the purview of the bankruptcy court to discharge. Filing a bankruptcy petition solely to avail oneself of the automatic

stay is "bad faith." *In re Grand Traverse Dev. Co. Ltd. Partnership*, 151 B.R. 792, 798 (W.D. Mich. 1993) (internal citations omitted).

## CONCLUSION

Eifler Sr. is attempting to game the system. He scrambled to transfer his assets to trusted family members and other insiders, and now is claiming bankruptcy in bad faith in an attempt to further delay enforcement of the state court judgment against him. Chapter 11 provides no relief and this petition should be dismissed.

Respectfully submitted,

/s/ Theodore Walton
GARRY R. ADAMS
THEODORE WALTON
A. PETE LAY
CLAY DANIEL WALTON & ADAMS PLC
Suite 101 Meidinger Tower
462 South Fourth Street
Louisville, KY 40202
(502) 561-2005
Counsel for Plaintiff-Appellee

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was electronically filed on July 18th, 2017, with the Court's CM/EFS system and such system will send electronic notice to all counsel of record.

/s/ Theodore Walton
GARRY R. ADAMS
THEODORE WALTON
A. PETE LAY

11