**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

*Filed Electronically*

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CHAPTER 11 |
| THOMAS O. EIFLER, SR. | ) | |
| | ) | CASE NO. 17-31862-thf |
| DEBTOR | ) | |
| | ) | |

**UNITED STATES TRUSTEE'S OBJECTION TO DISCLOSURE STATEMENT**

Samuel K. Crocker, the United States Trustee ("UST") for Kentucky and Tennessee, by undersigned counsel, objects (the "Objection") to the *Disclosure Statement* [DE 86] (the "Disclosure Statement") filed by Thomas O. Eifler, Sr. ("Eifler" or the "Debtor"). In support of his Objection, the UST states as follows:

**BASIS FOR OBJECTION**

Through this Objection the UST asserts that the Disclosure Statement fails to provide creditors with adequate information as required by 11 U.S.C. § 1125. Specifically, the Disclosure Statement fails to disclose, value, or provide critical information about certain estate assets. In addition, the Disclosure Statement describes, but does not explain certain elements of the underlying plan of reorganization. At a bare minimum, a disclosure statement must explain to a creditor "what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H.,1991). In this instance Eifler needs to provide additional information about assets of the estate and

further explain certain elements of the creditor trust he proposes to create as part of his plan.

## FACTS

1. On June 6, 2017 (the "Petition Date"), Eifler filed a voluntary petition for bankruptcy relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, Eifler has managed his financial affairs as a debtor in possession.

2. Since 1973, Eifler has been a financial advisor, most recently working with J.J.B. Hilliard, W.L. Lyons, LLC. As a financial advisor, Eifler has a book of business that consists of clients whose investments he manages on behalf of his firm.

3. On information and belief, Eifler has been married to Diana Eifler for approximately 40 years. Also on information and belief, Mrs. Eifler has not worked outside the home during most of that period. On his schedules, Eifler indicates that he transferred approximately $110,000 to Mrs. Eifler between February and June of 2016, transactions he characterizes as gifts. *See Schedules Remaining, Chapter 11 Statement of Current Monthly Income* D.E. 8 at 13.

4. Also on his schedules, Eifler indicates that he transferred significant sums as gifts to his family or to third parties on behalf of his family. *Id.* at 12-14. In addition, he indicates that he may have made transfer to, or for the benefit of insiders, that he is unable to identify through his bank account statements. *See Id.* at 11.

5. On September 27, 2017, Eifler filed a *Motion for an Order Authorizing Debtor to Execute Successor Contract* (the "Metzger Transaction"). In the Metzger Transaction, Eifler requests Court authority to monetize his book of business by transferring control of these accounts to another Hilliard advisor in exchange for

monthly payments of $15,000. To support this request, Eifler explains that the purpose of the transaction is to protect his "creditors or heirs" against the risk that he dies or is incapacitated and can no longer generate income from this book of business.

6. On October 4, 2017, Eifler filed the Disclosure Statement. The Disclosure Statement details Eifler's reorganization plan in which he intends to liquidate certain assets to repay his creditors. To effectuate this plan, Eifler intends to create a trust for his creditors (the "Creditor's Trust") and select a trustee (the "Liquidating Trustee") to liquidate the assets committed thereto.

7. Throughout the pendency of this case the UST has requested, and received, a significant amount of financial information from Eifler. Based on a review of this information, the UST asserts that the Disclosure Statement either fails to disclose or significantly under-values the following assets:

| Asset | UST's Value[1] | DEBTOR's VALUE |
|---|---|---|
| Potentially Recoverable Transfers[2] | $446,000 | No Value given |
| Metzger Transaction | $417,000 | Not Disclosed |
| Fairfax group | $16,000 | $606 |
| 5 Year cash flow[3] | $467,000 | $307,926 |
| TOTAL | $1,349,000 | $308,532[4] |

---

[1] Values are based on UST estimates derived from an examination of Eifler's schedules, bank statements, tax returns, monthly operating reports and various other financial records.

[2] The Disclosure Statement seems to convey to the Liquidating Trustee the power to recover certain transfers. However, the Disclosure Statement does not: (i) value these transfers, or (ii) explicitly list them in the Creditor's Trust. Instead, Eifler allocates "Other Claims" to the Creditor's Trust without providing any value for, or description of, this line item.

[3] This estimate excludes income derived from the Metzger Transaction and the Fenley Campus Hotel, LLC investment.

[4] The UST derived this figure from the *Exhibit B, Projected Disposable Income* attached to the Disclosure Statement. This figure is the Monthly Disposable Income amount reported by Eifler on Exhibt B multiplied by 60 to arrive at a total over a five-year period.

Page | 3

Most of these assets are composed of Eifler's projected income over a five-year period. A clear disclosure of these assets would allow creditors to compare their value with that of the assets committed to the Creditor's Trust. In contrast, the Fairfax Group is a business that owns the real estate where Eifler's former financial advisory practice was located. The value attributed to this asset seems low based on the financial information the UST has reviewed.

8.  A copy of Eifler's proposed Plan of Reorganization is appended as Exhibit 1 to the Disclosure Statement. Attached to the Plan of Reorganization is Annex 1 which details the assets that Eifler intends to commit to the Creditor's Trust. Eifler has not provided a description of, or value for, the following assets which are listed in Annex 1:

   a. **TEDE, LLC**: On information and belief, Eifler and his spouse own 100% of the interests in TEDE, LLC. This entity owns interests in WEM Development Company, LLC ("WEM") which developed and owns the Gallery Square Lofts condominium complex ("GSL"). To finance the development and construction of the GSL complex, WEM borrowed money from Wilson & Muir Bank. Eifler, and two other interest holders in WEM, signed personal guarantees for WEM's obligation to Wilson & Muir. WEM sold 4 units in the GSL complex and has rented the remaining units, but has been unable to generate sufficient revenue to either repay, or service, its loan obligations to Wilson & Muir. As such, the WEM interest holders, including TEDE, are currently making payments to Wilson & Muir in order to maintain control over the GSL complex.

   b. **Carribeam Investment Business Ltd.:** Eifler does not provide any information about this entity. In fact, the Disclosure Statement is silent to (i) the identity of the parties having an interest in the entity; (ii) the assets owned by the entity; and (iii) the debt load of the entity. There is no way a creditor can make an informed judgment about the effect of this asset on the Creditor's Trust.

   c. **Eifler Group Lonestar State Inc.**: On information and belief, this entity was part of Eifler's financial advisory business prior to his employment with Hilliard. As far as the UST can determine, this entity is

Page | 4

no longer operating. The Disclosure Statement does not provide a description of assets that this entity owns, debts it owes, or the identity of its parties having an ownership interest in it.

d. **Eifler Group Inc.**: This is Eifler's former financial advisory business which he indicates that he shut down in February of 2017. There is no description of the assets and debts of the company or explanation for the valuation provided in the Disclosure Statement.

e. **Eifler Tax Group Inc.**: This is an offshoot of Eifler's former financial advisory business. There is no description of the assets and debts of the company or explanation for the valuation provided in the Disclosure Statement.

f. **Fenley Campus Hotel LLC**: This is an interest in an Embassy Suites hotel. The Disclosure Statement does not provide any information about the capital structure of the business, regularity of dividend payments, or transferability of the interests in this business.

g. **Other Claims**: The Disclosure Statement provides no description whatsoever of the definition of "Other Claims." The UST assumes that this may refer to transfers Eifler has made that may be avoidable by the Liquidating Trustee. However, it is impossible to determine if this is the case.

Without a valuation or description of these assets, it is nearly impossible to determine if they increase or reduce the value of the Creditor's Trust.

9.     The Disclosure Statement does not provide a concise description of the effect of the Liquidating Trustee's abandonment power on assets of the Creditor's Trust. It is clear from the Disclosure Statement that the Liquidating Trustee can abandon assets he or she determines to be burdensome, but the consequences of abandonment are unclear.

10.    In the Disclosure Statement, Eifler indicates that, for tax purposes, all parties will treat the transfer of assets into the Creditor's Trust as "(i) a transfer of the

Trust Assets directly to the Beneficiaries immediately followed by (ii) the transfer of the Trust Assets to the Liquidating Trust by the Beneficiaries" (the "Tax Transfer"). *Disclosure Statement, Annex 2 at 3 ¶ 1.2*. Eifler goes on to explain that his creditors "shall be treated as the grantors and owners of their allocable portion of the Liquidating Trust for federal income tax purposes." *Id.* Eifler does not explain the purpose of the transaction, but does indicate that the effect will be an increase in tax obligations for the creditors.

## LAW & ARGUMENT

11.     Pursuant to 11 U.S.C. § 1125(a)(1), a Chapter 11 debtor must file a disclosure statement that provides "adequate information" which "would enable ... a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). In order to determine if a debtor's disclosure statement provides "adequate information," a bankruptcy court must consider the specific facts of that debtor's case. *See In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988); *See also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 225, 409 (1977). However, at the very minimum, a disclosure statement should provide enough information about a debtor and its plan to allow "the average unsecured creditor [to determine] what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H.,1991). Once the adequacy of information in the debtor's disclosure statement has been called into question, the bankruptcy court must employ a cost-benefit analysis to determine if the debtor should provide additional disclosures. 11 U.S.C. § 1125(a)(1); *See also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 225, 409 (1977).

12. In order to ensure that Chapter 11 debtors provide disclosures which meet the "adequate information" standard, bankruptcy courts have developed categorical lists detailing the type of information a disclosure statement should contain. *See In re Malek*, 35 B.R. 443, 443-5 (Bankr. E.D. Mich. 1983); *In re Scioto Valley Mortgage Co.*, 88 B.R. 168 (Bankr. S.D. Ohio 1988); *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990). In *In re Cardinal Congregate I*, the bankruptcy court laid out 19 factors which it would use to determine the adequacy of information provided in disclosure statements. Included among those factors were the following factors: "[1] A complete description of the available assets and their value…..; [2] [t]he actual or projected value that can be obtained from avoidable transfers." *Cardinal Congregate I*, 121 B.R. at 765. The United States Trustee asserts that these factors are relevant in the present case because they illuminate the areas in which the Disclosure Statement fails to provide "adequate information."

13. In this case, Eifler has not provided a complete description and valuation of all available assets. One asset, TEDE, is described in the Disclosure Statement, but the negative financial impact of the investments held by this entity is not sufficiently emphasized. As explained above, the members of TEDE will need to continue to advance cash to WEM in order to maintain the underlying interest in the GSL development. As such, TEDE will immediately become a cash drain on the assets of the Creditor's Trust. In contrast, certain assets, such as Carribeam Investments, Ltd., Eifler Group, Inc., Eifler Lonestar State, Inc., Eifler Tax Group and Fenley Campus Hotel LLC, are not described at all in the Disclosure Statement. Creditors are not given any information about the assets, debts, interest holders, or income of these entities. Nor are creditors provided with any information about how Eifler arrived at the

valuations he attributed to each of these entities. The same is true for the transfers he has made to insiders which are referred to as "Other Claims." Eifler provides no valuation for these transfers nor describes them in any detail. Instead, the Disclosure Statement provides an unexplained valuation for certain assets coupled with the promise that "[a]s soon as practicable after the Effective Date, the Liquidating Trustee shall make a good faith determination of the fair market value of the Trust Assets as of the Effective Date." *Disclosure Statement, Annex 2* at 3 ¶ 1.3. Such a valuation, of course, is the responsibility of the debtor within the disclosure statement process. *Cardinal Congregate I*, 121 B.R. at 765. Accordingly, Eifler should provide a more thorough description, and valuation, of these assets so that creditors can determine if the plan of reorganization represents a fair outcome.

14.    In the Disclosure Statement, Eifler does not provide full disclosure of his income over a prospective five-year period of a reorganization plan. Under Section 1115, the income of an individual debtor is property of the estate until "the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13." 11 U.S.C. § 1115(a)(2). As such, in the very least, an individual Chapter 11 debtor must provide a thorough disclosure of his or her income during the period from the petition date through the prospective completion of the plan. In this instance, the UST asserts that Eifler has not adequately disclosed his income during the applicable period. Based on the financial information the UST has reviewed, Eifler has $494,000 of income over a prospective five-year period.[5] In comparison, Eifler indicates that he has $5,132.10 of monthly disposable income or $307,926 over a five year period. *See Disclosure*

---

[5] The UST's estimate excludes income from the Metzger Transaction and the Fenley Campus Hotel, LLC investment.

*Statement,* Exhibit B, Projected Disposable Income. The UST asserts that Eifler's income is higher and should be disclosed as an asset of the estate so that creditors can assess these sums in comparison to the assets pledged to the Creditor's Trust.

15. The Disclosure Statement contains terms which are not entirely explained. The Disclosure Statement indicates that the Liquidating Trustee has the power to abandon assets he or she deems burdensome to the Creditor's Trust. However, the Disclosure Statement does not explain what becomes of the asset after abandonment. Similarly, the Disclosure Statement provides for the Tax Transfer, but does not explain the reason for this treatment of the transfer of assets from Eifler to the Creditor's Trust. Both of these terms should be explained in more depth to provide creditors with a thorough understanding of the effect confirmation of the plan would have on their claims.

Based on the foregoing, the UST respectfully requests that this Court deny approval of the Disclosure Statement.

Dated: November 9, 2017
      Louisville, KY

Respectfully Submitted

**SAMUEL K. CROCKER**
United States Trustee, Region 8

*/s/ Charles R. Merrill*
Charles R. Merrill
Assistant U.S. Trustee
U. S. Department of Justice
Office of the U. S. Trustee
601 W. Broadway, Ste. 512
Louisville, KY 40202
Telephone: (502) 582 - 6000
Facsimile:  (502) 582 - 6147
Charles.Merrill@usdoj.gov

## CERTIFICATE OF SERVICE

   In accordance with Local Rule 9036-1, I certify that on November 9, 2017, I sent a copy of the foregoing *Objection* to all parties who requested notice in the above-captioned case by either: (1) electronic means through the Bankruptcy Court's CM/ECF system; or (2) First Class U.S. Mail if the Notice of Electronic Filing from this Court's CM/ECF system indicates that there are interested parties not deemed to have consented to electronic notice or service.

                */s/ Charles R. Merrill*
                CHARLES R. MERRILL